

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
~~ATTORNEY GENERAL~~
**ATTORNEY GENERAL**

**AUSTIN 11, TEXAS**

Honorable Tom L. Hartley
Criminal District Attorney
Edinburg, Texas

Attention: Mr. H.H.Rankin,Jr.

Opinion No. O-3791
Re: Is the chief of police entitled to act in the mentioned capacity and transport prisoners to the county jail out of his jurisdiction in an automobile furnished by the city and receive a fee therefor, or should prisoners be turned over to the constable or sheriff? And related questions.

Dear Sir:

  This will acknowledge receipt of your request for the opinion of this department on the hereinabove captioned matter. We quote from your original letter and your subsequent letter, giving us additional facts, as follows:

  "The Chief of Police of the City of McAllen, a home rule city, Hidalgo County, Texas, is paid a certain definite salary per month for his services as such to said City. He further from time to time files cases charging Justice Court misdemeanors in the Justice of the Peace Courts in the McAllen Justice Court precinct. On such occasions he performs all the duties of a sheriff or constable such as making the arrest, summoning a jury, waiting upon the Court, and in case the fine is not paid, the execution of the commitment by transporting the prisoner to the county jail. In the transportation of these prisoners he uses an automobile furnished him by his employer, the City of McAllen, and it is necessary for him to leave the City in which he has jurisdiction in order to get the prisoner to the County jail. As a matter of practice the people he arrests, who are in a position to pay a fine, are tried and fined in

Hon. Tom L. Hartley, page 2. (O-3791)

the Corporation Court. Cases are only filed in Justice of the Peace Courts when it appears in all probability that the Defendant will not be able to pay the fine and have to be committed to jail."

"1. The specific offenses involved in these cases are disturbing the peace, affrays, assault and battery, drunk in a public place, and other similar offenses of which both the Justice of the Peace Courts and the Corporation Court have concurrent jurisdiction.

"2. The offenses in question are all committed within the corporate limits of the City of McAllen, Texas.

"3. All of the complaints filed in the Justice Courts are for violations of the State laws. No complaints are filed in the Justice courts for violation of city ordinances, however, in some cases there may also be a valid city ordinance covering the same offense as is covered by the State laws.

"4. The great majority of the arrests in the cases in question are made without a warrant.

"5. Those arrests made with warrants, in cases handled by the Chief of Police in the Justice Courts, are all made on warrants issued out of the justice court where the case is filed. No warrrants of arrest are issued out of the Corporation Court in cases filed or to be filed in the Justice Courts.

"The information that this office has received is that as a matter of actual practice the majority of the arrests are made without warrants and grow out of offenses committed within the sight of such police officer as he cruises about the City of McAllen in the discharge of his duties as Chief of Police of said City.

"After the offender is arrested he is then transported to the city jail to await trial. It

is then, or at some time before the case comes to trial, that the Chief of Police decides whether to file that particular case in the Corporation Court or in one of the Justice Courts in the City of McAllen."

"This office is familiar with your opinion No. 2112 to the Hon. B. M. Whiteacre, County Auditor, of Grayson County, Texas, dated April 1, 1940, and the authorities therein mentioned.

"In view of the above statement and the above mentioned opinion rendered by your office we would appreciate having the following questions answered.

"1.  Is such Chief of Police entitled to act in such capacity and transport prisoners to the County Jail, out of his jurisdiction in an automobile furnished by the City and receive a fee therefor, or should prisoners be turned over to Constable or Sheriff?

"2.  Is such Chief of Police a proper officer to summon a jury under Article 892 of Code of Criminal Procedure of Texas to try the cases he has filed, and if so, receive a fee for such service?

"3.  Does the fact that such officer is paid a salary by the City affect his right to receive fees?

"4.  Is it proper for such officer to pay the fees he receives into the treasury of the City that employs him?

"5.  Would such Chief of Police be required, if entitled to these fees, to make an annual report of the same as a duly elected Constable?"

The statutes provide for the election by the people of a City Marshal (Article 977, V.A.C.S.) who shall be ex officio chief of police.  Articles 999 and 1147, V.A.C.S., prescribe his powers and duties.

City Marshals are peace officers.  Article 36, V.A.C.C.P., reads as follows:

"The following are 'peace officers:' the
sheriff and his deputies, constable, the marshal
or policemen of an incorporated town or city, the
officers, non-commissioned officers and privates
of the State ranger force, and any private person
specially appointed to execute criminal process."

Article 1067, V.A.C.C.P., provides that:

"Constables, marshals or other peace offi-
cers who execute process and perform services for
justices in criminal actions, shall receive the
same fees allowed to sheriffs for the same services."

Article 40, V.A.C.C.P., provides as follows:

"If any sheriff or other officer shall wil-
fully refuse or fail from neglect to execute any
summons, subpoena or attachment for a witness, or
any other legal process which it is made his duty
by law to execute, he shall be liable to a fine
for contempt not less than ten nor more than two
hundred dollars, at the discretion of the court.
The payment of such fine shall be enforced in the
same manner as fines for contempt in civil cases."

Article 26, V.A.P.C., reads as follows:

"The term 'criminal process' is intended to
signify any capias, warrant, citation, attachment,
or any other written order issued in a criminal
proceeding, whether the same be to arrest, commit,
collect money, or for whatever purpose used."

In answer to your first question, it is the opinion
of this department, under the facts stated, that the chief of
police is not entitled as a matter of right to act in any of
the capacities mentioned, except to make the arrest, under
the facts stated. He is however, authorized to act in the
other capacities named (summon a jury, wait upon the court,
and in case the fine is not paid, to execute the commitment)
when ordered to do so by the justice of the peace in each
instance. The justice of the peace could order the sheriff
or constable to perform any of the services necessary subse-
quent to the arrest by the chief of police. Where the chief
of police is ordered to perform such services by the justice

of the peace, he must do so and is entitled to receive the statutory fees provided for such services.

Whether he can use the city's automobile in transporting such prisoner to the county jail, out of his jurisdiction, and whether he must turn such fees over to the city, are questions which depend on the charter, ordinances, or his contract with the city, specifying the terms of his compensation. We therefore express no opinion on these latter questions.

Article 892, V. A. C.C.P., reads as follows:

"If the accused does not waive a trial by jury, the justice shall issue a writ commanding the proper officer to summon forthwith a jury of six men qualified to serve as jurors. Said jurors when so summoned shall remain in attendance as jurors in all cases that may come up for hearing until discharged by the court. Any man so summoned who fails to attend may be fined not exceeding twenty dollars for contempt."

In answer to your second question, it is the opinion of this department that, under the facts stated, such chief of police is a proper officer under Article 892 to summon a jury to try the cases he has filed and is entitled to receive the statutory fee for such service.

Home Rule cities are expressly given the authority to fix the compensation of their officers. Article 1175, V.A.C.S. The city could, therefore, pay the chief of police a salary only, or, a salary and, in addition, permit him to retain part or all of the statutory fees, or he could be paid strictly on a fee basis.

While the fact that such officer is paid a salary by the city, as stated in your question, would not affect his right to receive the statutory fees provided for the services rendered by him, it might affect his right to retain such fees for himself.

In answer to your third question, it is therefore the opinion of this department, under the facts stated, that such officer is not prohibited from receiving the statutory fees for the services rendered by him. Whether such officer may keep such fees for his own use as a part of his compensation, however, is a question which depends on the terms of the ordinance or agreement fixing his compensation. As we have not

been advised as to the exact nature of the terms of his compensation, we are unable to pass upon that specific point.

However, in your third question you state that such officer is paid a salary by the city. If the ordinance, fixing his compensation, provides merely that he shall be paid a salary and does not expressly authorize him to retain, in addition thereto, any fees as part of his compensation, then, we are of the opinion that he would not be entitled to retain such fees as part of his compensation, but should pay them into the City Treasury.

Statutes prescribing fees for public officers are strictly construed and hence a right to fees may not rest in implication. Where this right is left to construction, the language of the law must be construed in favor of the government. Where a statute is capable of two constructions, one of which would give an officer compensation for his services in addition to his salary and the other not, the latter construction should be adopted. 34 Tex. Jur., pages 508, 509.

In answer to your fourth question, it is therefore the opinion of this department, under the facts stated, that unless the city ordinance or agreement fixing the compensation of such city marshal expressly and clearly authorizes him to retain such fees as part of his compensation, it would not only be proper for him to pay his fees into the city treasury but he would be subject to criminal prosecution if he applied such fees to his own use. See Article 95, V.A.P.C.

Article 3896, V.A.C.S., requiring certain officials to keep accounts in the manner therein set out, and Article 3897, requiring certain officials to make an annual sworn statement, does not apply to a city marshal or chief of police. Such officer is, however, required to keep a fee book in accordance with Articles 1009-1010A, V.A.C.C.P.

In answer to your fifth question, you are, therefore, advised that, under the facts stated, it is the opinion of this department that such chief of police is not subject to the requirements of Articles 3896 and 3897, V.A.C.S., but that he must comply with the requirements of Articles 1009-1010A, V.A.C.C.P., regarding fee books.

Trusting that the foregoing fully answers your inquiry, we are

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By /s/ Edgar Pfeil
Edgar Pfeil
Assistant

APPROVED OCT. 16, 1941

/s/ Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

EP:db:zt

APPROVED
Opinion
Committee
By B.W.B.
Chairman